HIERS v. GOODING.

SAME v. RIVERS.

1. DOWER—DEVISE—ELECTION.—A wife cannot be deprived of her right to dower by any devise of her husband, but he may by will make provision for his wife in substitution for her dower, and if she elect to accept such provision, she forfeits her dower by her own act of election. But she is not put to an election, unless it appear upon the face of the will, either in express terms or by necessary implication, that the testator intended to annex as a condition to the provision made for his wife that she should surrender her right of dower.

2. IBID.—IBID.—IBID.—Where a will declares that testator's widow shall be allowed to remain at the homestead with its devisee during life or widowhood, and to be provided with a support out of the proceeds of the estate, for which purpose the entire estate is to be kept together during her life or widowhood, and another house on the place is to be provided for her or the devisee if she and the devisee cannot live together agreeably, such will gives no estate to the wife, but an annuity charged upon the estate, and does not expressly declare that the provisions for her are in lieu of dower, and they are not so manifestly repugnant to the right of dower that the two cannot stand together, and, therefore, the will does not clearly imply

an intention to exclude dower. Therefore, this widow, by an acceptance of the provisions of this will for her, did not surrender her right to dower.

3. CASE CRITICISED.—This case distinguished from Sumerel *v.* Sumerel, 34 S. C., 85.

Before TOWNSEND, J., Hampton, April, 1894.

Actions by Rebecca H. Hiers against Annie E. Gooding, and same plaintiff against R. M. D. Rivers, for dower, commenced in January, 1891. The will of F. D. Rivers was as follows:

In the name of God. Amen. I, Franklin D. Rivers, of the county and State aforesaid, being of sound and disposing mind, and knowing the uncertainties of life, do make, ordain, and publish this my last will and testament, in manner and form following, thereby revoking all former wills by me made at any time heretofore:

First of all, I desire to commit my soul to God, who gave it, and my body to be buried in a Christian-like manner, and all expenses for said purposes paid from my cash money in hand. Then I desire that my executor, hereinafter named, shall pay all my just debts from my estate. For and in consideration of the love and affection which I bear and have for my nephew, George Thomas Rivers, I give and bequeath to him my entire home tract of land, where I live, containing 255 acres, more or less, as is designated on plat drawn for me by R. J. Manker, surveyor, September 6, 1877, "A," and bounded * * Together with my two mules, Dunk and Etta, my stock of neat cattle, the brand and mark, my whole stock of hogs, with mark, my entire stock of plantation tools, plows and gears, wagon, sugar mill, sugar boilers, household and kitchen furniture, and my entire stock of provisions on hand, together with my entire crop or crops that may be made or grown on my place this year.

It is further my will that my nephew, George Thomas Rivers, keep my entire property together during the life of my wife or her widowhood; and it is further my last will and testament, that my wife, Rebecca H. Rivers, remain, as she now lives, on my place at home, during her natural life or widowhood, and that the said George Thomas Rivers is to protect and support her during such life or widowhood comfortably, out of the pro-

ceeds of my estate, without any expense or trouble to my wife; and in case my wife, Rebecca H. Rivers, and my nephew, George Thomas Rivers, cannot live agreeably, it is my will and pleasure that my nephew, George Thomas Rivers, provide a house for himself or for my wife to live comfortably in on my place, and to continue to support and protect her during her natural life or her widowhood; and in case my wife should marry after my death, then all claims of protection or support from my nephew, George Thomas Rivers, shall cease, and all provision in my will for her support cease, except that it is my will and pleasure that my wife take as her own all the cash money I have on hand, after paying the expenses of making and harvesting my present crop. It is further my will that should my nephew, George Thomas Rivers, die before he reaches the age of manhood or twenty-one years, or die leaving no lawful issue after arriving at such age, it is further my will and pleasure that my nephew, Jacob Henry Rivers, take possession of my property or estate hereinbefore named, and be my lawful heir; and should he get possession during the life of my wife or during her widowhood, every part and sentence of my will enjoined upon my nephew, George Thomas Rivers, for the support and protection of my wife during her natural life or widowhood, is as strictly enjoined on my nephew, Jacob Henry Rivers.

It is further my will and pleasure that my nephew, Jacob Henry Rivers, shall have the mule I bought him this year, and that any obligations given for it shall be cancelled. It is also my will that my nephew, W. M. D. Rivers, son of my brother, J. Martin Rivers, shall have, in fee simple, that tract of land I bought from my brother, J. Martin Rivers, and containing 228 acres, and is designated on plat drawn for me by R. J. Manker, September 6, 1877, as "B," and bounded as follows: * * *

It is further my will and pleasure that should my nephew, W. M. D. Rivers, die before arriving of age (twenty-one years), or after arriving at such age leaving no lawful issue, the tract of land "B" is to go to my brother, J. Martin Rivers, and in case he is not living, it shall be equally divided among his surviving heirs. And 'tis further my will and pleasure, that my brother, J. Martin Rivers, qualify and act as guardian for

my nephew, W. M. D. Rivers, his son; take charge of the tract of land "B" that I have willed him, until he arrives of age. It is further my last will and testament that should my nephew, George Thomas Rivers, die leaving lawful heirs, before any of the said heirs arrive at the age of discretion or legal age, that my nephew, Jacob Henry Rivers, take charge of the property willed to my nephew, George Thomas Rivers, and manage to best advantage said property, duly observing my will in every particular, until the oldest child of George Thomas Rivers becomes of age, when he is by my will to be relieved of further care or control of said property. It is further my last will and testament that I nominate and appoint C. M. Rivers and J. W. Rivers my sole executors of my last will and testament, charging them with the execution of the provisions in my will above stated, with full power to take moneys enough out of my cash money on hand to pay all expenses incurred settling my will. In witness, etc.

*Messrs. Warren & Smith* and *A. M. Boozer*, for appellants.

*Mr. W. S. Tillinghast*, contra.

March 29, 1895. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. These two cases based upon the same facts, substantially, and involving the same questions of law, were heard and will be considered together. The only question presented is, whether the demandant is barred of her dower by reason of her acceptance of the provision made for her by the will of her first husband. A copy of this will should be incorporated in the report of this case, as we only propose here to state what we understand to be the provisions therein made for the demandant. The testator, after providing for the payment of his debts and funeral expenses, devises to his nephew, George Thomas Rivers, his home tract of land, containing 255 acres, more or less, designated on the plat therein referred to by the letter "A," together with two mules, stock of cattle and hogs, besides other personal property therein specified, and then proceeds as follows: "It is further my will, that my nephew, George Thomas Rivers, keep my entire prop-

erty together during the life of my wife or her widowhood; and it is further my last will and testament, that my wife, Rebecca H. Rivers, remain as she now lives, on my place at home during her natural life or widowhood, and that the said George Thomas Rivers is to protect and support her during such life or widowhood, comfortably out of the proceeds of my estate, without any expense or trouble to my wife; and in case my wife, Rebecca H. Rivers, and my nephew, George Thomas Rivers, cannot live agreeably, it is my will and pleasure that my nephew, George Thomas Rivers, provide a house for himself or for my wife to live comfortably in on my place, and to continue to support and protect her during her natural life or her widowhood; and in case my wife should marry after my death, then all claim of protection or support from my nephew, George Thomas Rivers, shall cease, and all provisions in my will for her support cease, except that it is my will and pleasure that my wife take as her own all the cash money I have on hand, after paying the expenses of making and harvesting my present crop." In a subsequent clause the testator devises to his nephew, W. M. D. Rivers, another tract of land, containing 228 acres, more or less, designated on the plat above mentioned by the letter "B." It is conceded that the demandant continued to live on testator's home place, after his death, for nearly three years, and until her intermarriage with her present husband, N. T. Hiers, deriving her support and maintenance therefrom.

The provision made for her in the will having ceased upon her second marriage, by the express terms of the will, she instituted these two actions in the Court of Probate, claiming dower out of the two tracts of land above referred to as designated by the letters "A" and "B." Her claims of dower having been allowed by the judge of probate, the defendants, respectively, appealed to the Circuit Court, where the decrees of the Court of Probate were affirmed, and judgment rendered accordingly. From these judgments defendants again appealed to this court upon the several grounds set out in the record, which need not be repeated here, as they, practically, raise only the single question, to wit: whether the demandant, by accepting

the provision made for her in the will of her first husband, has barred her claim of dower.

It is well settled that dower is a highly favored right, which, inchoate during coverture, becomes a vested *estate* in the wife, immediately upon the death of her husband, over which he has no more control than he has over any other separate estate of his wife. It follows, therefore, that when the husband undertakes to devise any real estate of which he was seized during coverture, it must be presumed that such devise is made subject to the wife's right of dower, for it would be absurd to suppose that he intended to devise that over which he has no control, and no right to dispose of. But while this doctrine is universally recognized, the law also recognizes the power of the husband, by proper provisions for that purpose in his will, to put his wife to her election, whether she will take the provision made for her in the will, or insist upon her legal right of dower; and if, in such a case, she elects to take the provision made for her in the will, she loses her right of dower; not, however, by any act of her husband, but only by reason of her voluntary surrender of such right. In other words, where the husband, by his will, practically says to his wife, I recognize fully your right to dower in a given tract of land, and concede that I have no power to deprive you of such right, but as I wish to give the entire estate in that land to my son, freed from your recognized right of dower therein, I will make another provision for you in lieu of that right—in such a case the wife is put to her election, whether she will agree to the terms proposed; and while she cannot be compelled to surreder her claim of dower, yet if she accepts the provision made for her in lieu of such claim, she is regarded as having voluntarily surrendered her right of dower, as she cannot, in the case supposed, claim both.

But, in order to put the wife to her election, it must appear upon the face of the will, either in express terms or by necessary implication, that the testator intended to annex, as a condition to the provision made for the wife, that she should surrender her right of dower. As is said by Ld. Redesdale, in *Bermingham* v. *Kerwan*, 2 Sch. & Lef., at page 452: "It is,

however, to be collected from all the authorities, that, as the right to dower is, in itself, a clear legal right, an intent to exclude that right by voluntary gift must be demonstrated, either by express words or by clear and manifest implication. If there be anything ambiguous or doubtful, if the court cannot say that it was clearly the intention to exclude, then the averment that the gift was made in lieu of dower cannot be supported; and to make a case of election, that is necessary, for a gift is to be taken as pure until a condition appears." To same effect, see remarks of Dargan, Ch., in his Circuit decree, in *Cunningham* v. *Shannon*, 4 Rich. Eq., at pp. 139, 140, which, as to this point, were affirmed by the Court of Appeals. Indeed, these general principles do not seem to be anywhere disputed, the only difficulty being in their application to the facts of any given case.

In the present case it is not pretended that the will contains anything like an express declaration that the provision made for his wife was intended to be in lieu of her dower, and the only inquiry is whether there is anything in the will clearly and manifestly implying that there was any such intention. The test of this is said in *Callaham* v. *Robinson*, 30 S. C., at page 254, quoting from the previous case of *Hair* v. *Goldsmith*, 22 S. C., 566, to be "whether the two are so manifestly repugnant that they cannot stand together"—"that the provision in the will is so manifestly repugnant to the right of dower, that the two cannot stand together." We confess that in this case we do not see any such repugnance. The right of dower when it becomes vested is an *estate*, and we do not understand that by the terms of this will any estate or interest of any kind in any property is given to the wife except in the cash on hand, which is not in question here. The only provision made for her is that she shall be allowed to "remain, as she now lives, on my place at home, during her natural life or widowhood," and that she is to be provided with a support, by George Thomas Rivers, "out of the proceeds of my estate," for which purpose he is directed to "keep my entire property together during the life of my wife or her widowhood." No estate or property of any kind is given to the wife, except the cash above

referred to, for tract "A" is given directly to George Thomas Rivers, and tract "B" is given directly to another nephew, W. M. D. Rivers. The provision for the wife seems to have been in the nature of an annuity for her life or widowhood, charged upon the *"entire property"* of the testator, with a permission for her to live upon the home place with the nephew, George Thomas Rivers, if agreeable to both parties; but if not, that the nephew shall provide another house on the same place either for himself or for the wife. There was no life estate in any of the property given to the wife, and hence the point decided in *Wilson* v. *Hayne,* Cheves Eq., 37, *Caston* v. *Caston,* 2 Rich. Eq., 1, and *Cunningham* v. *Shannon, supra,* do not arise. As we have said, the provision for her was rather in the nature of the annuity. So that the question is, whether a provision of that kind necessarily or even clearly and manifestly implies an intention to exclude the claim of dower. That point has been distinctly decided in the case of *Holdich* v. *Holdich,* 2 Younge & Col., 18, recognized in *Cunningham* v. *Shannon, supra,* where it was held that a gift of an annuity to the testator's widow, although charged on all the testator's property, is not sufficient to put her to her election, and the widow's claim of dower was allowed.

Inasmuch as the judgment below was rested largely, if not entirely, upon the case of *Sumerel* v. *Sumerel,* 34 S. C., 85, as conclusive of this case, we think it necessary for us to say that we cannot accept that view. In that case, dower was not claimed out of the land which seemed to have been set apart for the benefit of the widow, but out of two other tracts, which were directed to be sold and the proceeds divided between those of the brothers and sisters of testator, who were given no interest whatever in the tract of land from which the widow of testator was to derive her support. There was, therefore, no question in that case as there is here, as to whether the widow was entitled to dower in the tract of land from which she was to derive her support, and hence we do not regard that case as decisive of this. But having reached the same result as that reached by the Circuit Judge, for the reasons we have set forth,

The judgment of this court is, that the judgment of the Circuit Court be affirmed.